IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KRISTINA Y.,[1] | : | Case No. 3:20-cv-00388 |
| Plaintiff, | : : | Magistrate Judge Caroline H. Gentry |
| vs. | : : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : | |
| Defendant. | : | |

**DECISION AND ORDER**

**I.     INTRODUCTION**

Plaintiff filed an application for Disability Insurance Benefits in October 2017, and an application for Supplemental Security Income in December 2017. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 9), the Commissioner's Memorandum in Opposition (Doc. 11), and the administrative record (Doc. 8). Plaintiff did not file a Reply.

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since January 1, 2014. At that time, she was thirty-five years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Plaintiff has "limited education." *See* 20 C.F.R. § 404.1564(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 8-2, PageID 46-57), Plaintiff's Statement of Errors (Doc. 9), and the Commissioner's Memorandum in Opposition (Doc. 11). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

2

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651

3

(6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. FACTS

### A. The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| | | |
|---|---|---|
| Step 1: | | Plaintiff has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date. |
| Step 2: | | She has the severe impairments of diabetes with peripheral neuropathy, morbid obesity, degenerative disc disease, postural orthostatic tachycardia syndrome or POTS, coronary artery disease, complex regional pain syndrome (CRPS) of the left lower extremity, orthostatic hypotension, sick sinus syndrome, migraine headaches, seizures, and depressive/somatic disorder. |
| Step 3: | | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | | Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of sedentary work as defined in 20 CFR § 404.1567(a), subject to the following limitations: "never climb ladders, ropes or scaffolds; occasionally climb ramps |

4

> or stairs, balance, stoop, kneel, crouch or crawl; never work at unprotected heights, around moving mechanical parts or operating a motor vehicle for commercial purposes; moderate exposure to noise; understand, remember and carry out simple, routine tasks; able to perform simple work-related decisions and deal with simple changes in a work setting."
>
> She is unable to perform any of her past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 8-2, PageID 48-56.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 56-57.)

**B.     Dr. Amro Stino, M.D.**

Dr. Amro Stino, M.D., a neurologist, submitted a narrative letter in March 2019. (Doc. 8-17, PageID 3582.) Dr. Stino opined that Plaintiff's "debilitating diagnosis" of postural tachycardia syndrome—which was confirmed by tilt testing—had "left her wheelchair bound." Dr. Stino reported that Plaintiff was "refractory to multiple medications." (*Id.*) He also noted that Plaintiff's husband was "having to care for her extensively given her disability." (*Id.*)

Dr. Stino completed a Cardiac Medical Source Statement in May 2019. (Doc. 8-18, PageID 3708-12.) Dr. Stino referred to a "guarded" prognosis, and indicated that Plaintiff's symptoms included chest pain, syncope, exercise intolerance, near syncope, chronic fatigue, nausea, dizziness, and palpitations. (*Id.* at PageID 3708.) Dr. Stino opined that Plaintiff: could sit, stand, and/or walk for less than a total of two hours in an eight-hour workday; needed to shift positions at will; needed to take unscheduled breaks

5

approximately every two hours; was unable to lift any significant amount of weight; could rarely stoop; could never twist, crouch, squat, or climb ladders and stairs; and needed to avoid all exposure to hazards and environmental irritants. (*Id.* at PageID 3709-11.) According to Dr. Stino, Plaintiff was incapable of even "low stress" work and was "wheelchair bound." (*Id.* at PageID 3710.) Dr. Stino opined that Plaintiff needed to elevate her legs at a height of two feet for approximately ten percent of the workday. (*Id.* at PageID 3710.) Dr. Stino further opined that Plaintiff would be off task for at least twenty-five percent of the workday and would miss more than four days of work per month. (*Id.* at PageID 3711.)

The ALJ discounted Dr. Stino's opinions when discussing Plaintiff's symptoms, stating: "Dr. Stino's supporting assessment of exercise intolerance, syncope, dizziness, chest pain, chronic fatigue, palpitations and nausea was not submitted until May 2019 and was based on a treating relationship of less than six months." (Doc. 8-2, PageID 52.) The ALJ concluded that Dr. Stino's opinions were not persuasive:

> Dr. Stino's March 1, 2019 letter and May 13, 2019 assessment of a debilitating disorder leaving [Plaintiff] wheelchair-bound are not persuasive. As noted above, she appeared at a podiatrist in July 2015 using one without a prescription and was not prescribed use of a wheelchair until June 2018, at which time it was prescribed for short-term use only with the same note reflecting she was full weight bearing. Thus, this opinion is not consistent with prior medical findings until four years after the alleged onset date (factor 2); nor does the relevant objective medical evidence support this conclusion, but rather contradicts it (factors 1 and 5). Thus, although Dr. Stino is a treating neurologist (factor 4), the record does not support the opinion that [Plaintiff] is wheelchair-bound or that her postural tachycardic syndrome affected her RFC until recently, given the fact that he did not start treating [Plaintiff] until 2019, 5 years after the alleged onset date. Thus, his opinions are not based on either a long treatment relationship or frequent examinations

6

(factor 3). In sum, they are not persuasive.

(Doc. 8-2, PageID 55.)

V. ANALYSIS

Plaintiff contends that the ALJ "failed to fully consider the testimony of the vocational expert" and asserts that the ALJ's failure to include off-task, absenteeism, and ambulatory device limitations in the RFC constitutes reversible error. (*Id.* at PageID 9185-86.) Plaintiff further argues that the ALJ erred in his analysis of the opinion of treating neurologist Amro Stino, M.D. (*Id.* at PageID 9189.) Finding error in the ALJ's analysis of Dr. Stino's opinion, the Court does not address Plaintiff's other alleged errors and, instead, instructs the ALJ to address all of them on remand.

A. **Applicable Law**

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "**all** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claims in October and December of 2017, the new regulations for evaluating medical opinion evidence apply. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight,

7

to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors–supportability and consistency–are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[3] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

B. **Harmless Error**

Courts generally will excuse an ALJ's procedural violation as harmless error unless it prejudices the claimant on the merits or deprives him of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2007) (citing *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)). A court's ability to excuse a

---

[3] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

procedural error depends, however, upon the nature of the regulation and the importance of its procedural safeguard. *Id*. For example, an ALJ's failure to comply with the treating physician rule will rarely be excused. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Such an error may only be excused as harmless if the medical opinion "is so patently deficient that the Commissioner could not possibly credit it," if the violation is irrelevant because the Commissioner "adopts the opinion … or makes findings consistent with [it]," or if the goal of the procedural safeguard is otherwise met. *Id*. at 547.

The Sixth Circuit has not addressed the circumstances under which an ALJ's failure to explain his consideration of the supportability and consistency factors, as required by 20 C.F.R. § 404.1520c(b)(2), can be excused as harmless error. However, several district courts in the Sixth Circuit have held that the harmless error test articulated in *Wilson*, which applies to violations of the treating physician rule, should also apply to violations of Section 404.1520c(b)(2). *See Musolff v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 88910, *39 (N.D. Ohio Apr. 27, 2022) (citing cases). This Court agrees that the harmless error test articulated in *Wilson* should apply to violations of 20 C.F.R. § 404.1520c(b)(2).

The mandatory articulation requirement in Section 404.1520c(b)(2) is similar to the "good reasons" requirement of the treating physician rule. Under that rule, an ALJ who declines to give controlling weight to the opinion of a treating physician must articulate "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record." SSR 96-2p, 1996 WL 374188, *5 (1996). The ALJ's stated reasons "must be sufficiently specific to make clear to any subsequent

9

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. The purposes of the good reasons requirement are twofold: to permit meaningful judicial review of the ALJ's application of the treating physician rule, and to ensure that claimants understand why the ALJ disagreed with the opinion of their own physician, who considered them disabled. *Wilson*, 378 F.3d at 544-45.

The regulation at issue here is part of the regulatory framework that replaced the treating physician rule and its concomitant good reasons requirement. Under the new framework, ALJs do not give controlling weight to a treating physician's opinion. Instead, ALJs must evaluate the persuasiveness of each medical opinion by using a five-factor test. 20 C.F.R. § 404.1520c(c). ALJs are not required to explain their consideration of all five factors. 20 C.F.R. §§ 404.1520c(b)(2). They are, however, required to explain their evaluation of the supportability and consistency factors. *Id*. The regulation therefore imposes a burden of explanation, or mandatory articulation, upon ALJs.

The mandatory articulation requirement in Section 404.1520c(b)(2) serves the same purposes as the good reasons requirement of the treating physician rule. By requiring ALJs to articulate their analysis of the most important factors to consider when determining the persuasiveness of medical opinions (i.e., supportability and consistency), the requirement permits meaningful judicial review. It also ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive.

In sum, the function and purposes of the mandatory articulation rule in Section 404.1520c(b)(2) are similar to those of the good reasons requirement at issue in *Wilson*.

10

Therefore, the *Wilson* harmless error test should also apply to procedural violations of Section 404.1520c(b)(2).

This conclusion is consistent with Sixth Circuit's analysis in *Rabbers*. In that case, the Sixth Circuit reasoned that the *Wilson* test should not extend to a regulation that is a mere "adjudicatory tool" designed to aid the SSA. *Rabbers*, 582 F.3d at 656. Here, the mandatory articulation requirement is not an adjudicatory tool. Instead, it imposes a burden of explanation that serves an "independent and important function" by enabling judicial review and allowing claimants to understand the reasons for the decision. *Id*. The Commissioner's use of mandatory language (the ALJ "***will*** explain") confirms the importance of this procedural safeguard. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

The relative ease or difficulty of conducting a harmless error analysis is also a relevant factor to consider. *Rabbers*, 582 F.3d at 657. An ALJ's failure to comply with Section 404.1520c(b)(2) will make it difficult for a court to determine whether the error is harmless. *See, e.g., Terhune v. Kijakazi*, Case No. 3:21-cv-37, 2022 U.S. Dist. LEXIS 130309, *14-15 (E.D. Ky. July 22, 2022). This difficulty provides another reason for concluding that the *Wilson* test should apply to violations of Section 404.1520c(b)(2).

For these reasons, this Court concludes that the *Wilson* harmless error test applies to violations of 20 C.F.R. § 404.1520c(b)(2). Accordingly, an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met.

*Wilson*, 378 F.3d at 547. Such an error cannot be excused as harmless for other reasons, including where substantial evidence in the record may support the ALJ's conclusion regarding the persuasiveness (or lack thereof) of the medical opinion. *Id*. at 546.

### C. The ALJ Reversibly Erred When Analyzing Dr. Stino's Opinions

The Court concludes that the ALJ erred in his analysis of Dr. Stino's opinions and that these errors cannot be excused as harmless. Therefore, the Court reverses and remands the ALJ's decision.

When explaining why he did not find Dr. Stino's opinions to be persuasive, the ALJ discussed only one of his medical opinions: namely, that Plaintiff is wheelchair-bound.[4] (Doc. 8-2, PageID 55.) The ALJ explained that he found this opinion to be not persuasive because of the timing of Dr. Stino's opinion and the length of their treating relationship, as well as because of evidence that Plaintiff previously was not wheelchair-bound. (Doc. 8-2, PageID 55.)

The Court finds that the ALJ adequately addressed the consistency factor with respect to Dr. Stino's opinion that Plaintiff is wheelchair-bound. The ALJ did not, however, adequately address the supportability factor. Specifically, he failed to address some of Dr. Stino's proffered explanations for the opinion, including objective medical evidence (e.g., the tilt test) and the fact that Plaintiff is refractory to multiple medications. He also summarily dismissed Dr. Stino's explanation that Plaintiff had symptoms of

---

[4] Dr. Stino's statements that Plaintiff suffered from a "debilitating" diagnosis and had a "disability" are "statements on issues reserved to the Commissioner." 20 C.F.R. § 404.1520b(c)(3). The ALJ did not need to analyze these statements in his decision. 20 C.F.R. § 404.1520b(c). Therefore, the Court need not consider the ALJ's analysis of Dr. Stino's opinion that Plaintiff's diagnosis was "debilitating."

exercise intolerance, syncope, dizziness, chest pain, chronic fatigue, palpitations and nausea, due solely to the timing of the statement and length of the treatment relationship. (Doc. 8-2, PageID 52.) Although the length of the treatment relationship can be considered, 20 C.F.R. § 404.1520c(c)(3), it does not eliminate the requirement for the ALJ to explain his consideration of the supportability requirement. Therefore, the ALJ erred by failing to consider the supportability of Dr. Stino's opinion that Plaintiff is wheelchair-bound.

      The ALJ also erred by failing to address Dr. Stino's other medical opinions. Dr. Stino opined that Plaintiff: could sit, stand, and/or walk for less than a total of two hours in an eight-hour workday; needed to shift positions at will; needed to take unscheduled breaks approximately every two hours; was unable to lift any significant amount of weight; could rarely stoop; could never twist, crouch, squat, or climb ladders and stairs; and needed to avoid all exposure to hazards and environmental irritants. (Doc. 8-18 at PageID 3709-11.) Dr. Stino opined that Plaintiff needed to elevate her legs at a height of two feet for approximately ten percent of the workday. (*Id.* at PageID 3710.) Dr. Stino further opined that Plaintiff would be off task for at least twenty-five percent of the workday and would miss more than four days of work per month. (*Id.* at PageID 3711.)

      The ALJ failed to address the supportability, consistency, or persuasiveness of these opinions. Because they are medical opinions, the ALJ was required to evaluate them. 20 C.F.R. § 404.1520c  The ALJ erred by failing to analyze them and to explain his analysis of the supportability and consistency factors. 20 C.F.R. § 404.1520c(b)(2).

Next, the Court considers whether the ALJ's errors can be excused as harmless. The Court finds that Dr. Stino's opinions were not patently deficient and, further, that the ALJ did not adopt his opinions or make findings consistent with them. *Wilson*, 378 F.3d at 547. The remaining question is whether the goals of Section 404.1520c(b)(2) were met by the ALJ's decision. *Id*. In other words, the Court must determine whether the ALJ's explanation is sufficient to permit meaningful judicial review and to enable the Plaintiff to understand why the ALJ concluded that Dr. Stino's opinions were not persuasive.

The Court concludes that the ALJ's decision does not meet the goals of Section 404.1520c(b)(2). The ALJ did not address either the objective medical evidence or the explanations offered by Dr. Stino in support of his opinion that Plaintiff is wheelchair-bound. This error precludes meaningful judicial review and prevents Plaintiff from understanding why the information supporting Dr. Stino's opinion was not persuasive. The ALJ's failure to address Dr. Stino's other opinions also fails to meet these goals.

Accordingly, the Court concludes that the ALJ's errors in failing to comply with the mandatory articulation requirement in 20 C.F.R. § 404.1520c(c) cannot be excused as harmless. The Commissioner's decision must therefore be reversed and remanded. *Cf. Andrew M. v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-906, 2022 U.S. Dist. LEXIS 40323, *17-18 (S.D. Ohio Mar. 8, 2022) (Bowman, M.J.) (failure to comply with the mandatory articulation requirement in Section 404.1520c(b)(2) was not harmless where evidence in the record could have supported the rejected medical opinions); *Miles v. Comm'r of Soc. Sec.*, Case No. 3:20-cv-410, 2021 U.S. Dist. LEXIS 202840, *12 (S.D. Ohio Oct. 21, 2021) (Silvain, M.J.) (violation of the mandatory requirement in Section 404.1520c(b)(2)

required reversal and "the Commissioner's *post hoc* rationalization of how [the] ALJ could have applied the factors … does not cure this deficiency").

## VI. REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 9) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.

                                          */s/ Caroline H. Gentry*
                                          Caroline H. Gentry
                                          United States Magistrate Judge